Anderson, J.
delivered the opinion of the court.
This is an action of debt by the defendant in error against the plaintiff in error upon tvro bonds—one for $1,900, payable one day after date, and the other for $491.55, payable on or before the 1st of July 1869, both bearing the same date, the 24th of February 1869. They are executed to Milly Rice, the intestate of plaintiff below, and signed “ Mary B. Brown, adm’x of A. B. Brown,” with a (seal) annexed.
The defendant tendered two special pleas under the statute in bar of the action, both of which were rejected by the court. The second plea is substantially a plea to this effect. That the said Milly Rice, plaintiff’s intestate, in her lifetime “fraudulently procured the execution of the said writings obligatory in the declaration mentioned by the defendant, as administratrix of A. W. Brown, for and in consideration of the one-half of two notes not under seal, which had been executed to her in her lifetime by defendant’s intestate, and J. G. Brown as partners,'in their firm name of A. W. & J. G. Brown, by falsely and fraudulently representing to her, the said defendant, that the said notes were still “unpaid, valid, and in full force in law against the estate of A. W. & J. G. Brown, when, in truth and in fact, both of the said notes were then barred by the statute of limitations; which fact was well known to the said Milly Rice, but was fraudulently concealed from the defendant.
The averments by the first plea are more in detail. It sets out the dates of the notes of A. W. & J. G. Brown, and when payable; the death of J. G. Brown, *469 and the subsequent death of A. W. Brown, from which it appears that the latter, as surviving partner, was entitled to the possession of the social effects, and was bound for the debts of the firm; and from which it also appears that the said notes were barred by the statute of limitations in the lifetime of A. W. Brown, the defendant’s intestate. It also appears from the said plea, that the defendant never saw the said notes; but that representations were made to her by the plaintiff, then acting as the agent of Milly Bice, through defendants brother, that the said notes were lawful debts, outstanding against the estate of A. W. & J. G. Brown; and a proposition, that if she, as administratrix of A. W. Brown, would give her bonds for one-half of said notes, she, Milly Bice, would arrange the other half with the widow of said J. G. Brown, who was her daughter, and that the estate of A. W. Brown would be benefited, as it would thereby be released from one-half of the debt for which it was then bound. And that she, the defendant, was induced by these representations to assent to the proposition. That afterwards the plaintiff, as agent of the said Milly Bice, had the bonds, which are the writings obligatory in the declaration mentioned, drawn and sent to her by her brother, and she executed them as administratrix, and not in her own right, not knowing until after-wards the fraud which had been practiced on her in procuring the execution of her bonds for notes which were barred by the statute of Imitations, and which she had never seen. Such are in effect the averments of the first plea, stripping it of much that is immaterial and surplusage.
Both pleas are, that the bonds were executed by her in her character as administratrix, and not in her individual right, or as her personal obligations, as she had *470 no assets. Though the legal effect of the obligations-be different, and she is bound personally, the averment to the contrary cannot vitiate the pleas, if they consti-(;Ute a good equitable defence against the bonds, considering them as her personal obligations. And it cannot be doubted that the facts averred in the pleas present as good a defence against the bonds, regarding them as personal, as if they only bound the assets; because, whether personal or not, it was an obligation to pay the debt of the intestate; and if personal and binding upon her, it constitutes a stronger defence for her, because the debt being extinguished as a debt of the intestate by the statutory bar, she could have no recourse upon the estate if she paid it. The question remains, are these pleas a bar to the plaintiff’s action?
It is contended for the defendant in error, that the misrepresentation alleged by the pleas is a misrepresentation as to matters of law, and that such misrepresentation does not constitute fraud, because the law is presumed to be equally within the knowledge of all the parties. But whilst the legal proposition is in general true, it is also true that, “if a man dealing with another misleads him, and takes advantage of his ignorance respecting his legal position and rights, though there be no legal fraud, the case may come within the jurisdiction exercised by courts of equity.” Kerr on Fraud and Mistake, p. 90-1.
Mistake also, as well as fraud, is a ground for relief in equity. And whilst mistake, in matter of law, cannot in general be admitted as ground of relief, the maxim juris ignorantia non exousat is not universally applicable in equity. “ Mistake in law, to be a ground of relief in equity, must be of a material nature, and the determining ground of the transaction.” It was precisely so in this case. It may be a misapprehension *471 of the law, or of their rights, by both parties, “ or it may be a misapprehension of the law, or of his private right, by one of the parties alone.” Kerr on Fraud and Mistake 399.
If the mistake of law, or as to his private right, be that of one party only to the transaction, though the other party was not aware of it, a court of equity may, under the peculiar circumstances of the case, grant relief. “ But if ii appear that the mistake was induced or encouraged by the other party to the transaction, or was perceived by him and taken advantage of, the court will be more disposed to grant relief than in cases where it does not appear that he was aware of the mistake.” Kerr on Fraud and Mistake, p. 400. In support of this position the author cites vai’ious adjudged cases. He cites Broughton v. Hutt, where the heir at law of a shareholder in a company, the shares in which were personal estate, supposing himself, through ignorance of law, to be liable in respect of the shares, had executed a deed, taking the liability on himself, it was held that he was entitled to have the deed cancelled. Also, when a man having a legal security, gave it up in exchange for another security, upon the faith that the right which he gave up would be secured to him by the substituted security, but the substituted security proved a mere nullity, relief was given; also, where a woman renewed a note, believing that she was liable on the original note, relief was given. Ibid, p. 401. And other cases are cited. This last case is strikingly analagous to the case in hand if the defendant below executed her bonds under a mistake of law, that her intestate’s estate was liable upon the notes, for the one-half of which her bonds were given. But it is unnecessary now to decide how far courts of equity may go to relieve against a mistake of *472 law, as we regard the misrepresentations alleged were with regard to a matter of fact.
It was represented (2nd plea) that the notes in the possession of Milly Rice, or her agent, the plaintiff below, were subsisting debts, “ unpaid”—that they were “valid” debts, being “in full foi’ee in law against the estate.” By the first plea, that they were “lawful debts,” outstanding against the estate. “Lawful,” “outstanding,” still in force. These representations implied that they were under seal, or, that sufficient time had not elapsed since right of action had accrued on them to bar a recovery. The question was not as to the law of limitation. If the notes were not under seal, there was no doubt that the law of limitation was five years. The point about which the defendant was not informed, and about which she had not the means of information, (the notes being in possession of Milly Rice, or her agent, and not even surrendered upon the execution of the bonds by defendant, but retained in her possession, and only credited by her with the amount of the bonds when delivered to her or her agent,) was whether they were of such a character as to be subject to the limitation? or at what time right of action had accrued upon them? and whether they were barred by the lapse of time since?—facts which would appear from the inspection of the notes. But these difficulties were anticipated, and all met and removed by the assurances which were given by the plaintiff, acting as the agent of Milly Rice, through the brother of the defendant, as averred in the pleas. It is not necessary that the fact which does not exist should be expressly stated. It is laid down by the eminent writer, already referred to in his book, p. 91, and supported by a citation of numerous authorities, that “to constitute a fraudulent representation the *473 representation need not be made in terms expressly stating the existence of some fact which does not exist. If a statement be made by a man in such terms as would naturally lead the person to whom it was made to suppose the existence of a certain state of facts, and if such statement be so made designedly, and fraudulently, it is as much a fraudulent representation as if the statement of an untrue fact were made in express terms.”
The statements alleged to have been made by the pleas in this case, would naturally lead the defendant, to whom they were made, to conclude that the notes were under seal, or that five years had not elapsed since right of action had accrued on them. If they were lawful outstanding debts against the estate, they could not have been barred by the statute of limitations.
But it is argued, that the representations alleged by the pleas were not untrue; that a debt was not unlawful because it was barred by the statute of limitations. The allegation in one of the pleas is, that the debt was represented to be “ a lawful outstanding (that is subsisting) debt against the estate;” in the other, “ an unpaid” (that is subsisting) “valid” debt, being “in full force in law against the estate.” The fact is, the debt was barred by the statute of limitations in the lifetime of the intestate, and therefore could in no way be revived against the estate. Seig, adm’or v. Acord’s ex’or, 21 Gratt. 369, 371.) It was not therefore a lawful outstanding debt against the estate, or a subsisting, valid debt, in full force against the estate. The representation was therefore untrue in fact.
Again, it is argued that the defendant should not have relied upon these representations. She ought to have made further inquiry—she had the same means *474 of information that the other party had. That she had the same means of information does not appear from the averments of the pleas. But if she might have pac| access to accurate information it was not incumbent on her to make further inquiry. “A man to whom a particular and distinct representation has been made is entitled to rely on the representation, and need not make any further inquiry.” “No man can complain that another has relied too implicitly on the truth of what he himself stated.” (Same book, p. 80, 81.)
These false representations induced the defendant to-execute the bonds, as is substantially averred in the first plea. The second plea avers, that by these false- and fraudulent representations the execution of the bonds by the defendant were fraudulently procured by the plaintiff’s intestate. We are of opinion that both pleas, though imperfectly and informally drawn, set out sufficient matters of equitable defence under the statute to bar the plaintiff’s action. We are of opinion that the court did not err in overruling the defendant’s demurrer to the declaration, but that it erred in-rejecting the special pleas, and therefore that the judgment must be reversed with costs, and the cause remanded.
The judgment is as follows:
This day came again the parties by their attorneys, and the court having maturely considered the transcript of the record of the judgment aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing, and filed with the record, that the court below erred in rejecting the defendant’s special pleas. It is therefore considered that the judgment be reversed, the verdict be set aside, and the cause re *475 manded to the Circuit court of Rockingham county, to be proceeded with in conformity with the principles declared in the foregoing opinion, with instructions to said Circuit court, that if the defendant shall again offer her said special pleas that they be received, and the plaintiff be required to take issue thereon. And it is further considered that the plaintiff in error recover her costs of the defendant in error expended in the prosecution of her writ of error here, which is ordered to be certified to the said Circuit court of Rockingham.
Judgment reversed.