## FIDELITY & CASUALTY CO. OF NEW YORK v. SOUTHWESTERN BELL TELEPHONE CO.

### No. 12567.

Circuit Court of Appeals, Eighth Circuit.

Feb. 23, 1944.

A. S. Buzbee, of Little Rock, Ark. (Thomas S. Buzbee, Edward L. Wright, and John M. Harrison, all of Little Rock, Ark., on the brief), for appellant.

Blake Downie, of Little Rock, Ark. (John Mohler, of St. Louis, Mo., and Ike Murry and Downie & Downie, all of Little Rock, Ark., on the brief), for appellee.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The action is one by an insured against an insurer, on an Arkansas public liability policy, to recover $626.99 expended in the defense of a personal injury action and $3,500 paid in settlement of the suit without a trial. The insurer had refused to defend the personal injury action at the time it was instituted, on the ground that it was not within the policy coverage. On a trial of the action here involved, without a jury, the court entered judgment in favor of the insured for the amounts sought, and the insurer has appealed.

The policy insured generally against "loss from the liability imposed by law upon the Insured for damages * * * on account of bodily injuries or death alleged to have been suffered * * * by any person or persons, not employed by the Insured, * * * in consequence of and during the prosecution by independent contractors" of any work in the State of Arkansas incident to the construction, operation and maintenance of the insured's telephone system, "excluding wrecking except the wrecking of old poles and lines." A special rider was attached, requiring that all such work be done "under written contract stating that the work is being done wholly at the risk of independent contractors or independent sub-contractors", and declaring that "It is therefore specifically understood and agreed that this policy does not cover loss from liability for injuries or death where any work is done without written contract." There was also an exclusion clause providing that "This policy does not cover injuries or death—(1) suffered or caused by any employee or employees of the Insured".

The policy contained a further agreement by the insurer "to defend * * * every suit, even if groundless, brought against the Insured on account of bodily injury or death covered by this policy".

The personal injury action was one brought against the insured by a man named Cathey, who alleged in his complaint that he was an employee of the insured and that, while he was engaged in clearing some brush and trees from the insured's right-of-way in Arkansas, a fellow-employee named Spears cut down a thorn bush in such a negligent manner that it fell against Cathey and caused a thorn to enter his right knee. The insured contended that Cathey and Spears were not its employees, but that Cathey was doing the clearing work, under a written contract, as an independent contractor, and that Spears was Cathey's employee. The insured produced a written contract with Cathey, by which Cathey had agreed to clear the brush and trees from a specified part of the insured's right-of-way, for a fixed sum, and "to furnish and be responsible for all men and motor vehicle equipment necessary to carry out the above work", and to assume "all responsibility and liability for any accident that may happen, causing property damage or personal injury to myself, any or all of my employees or the general public."

The complaint in the present action alleges that, at the time Cathey's suit was instituted, the insured furnished the insurer with a copy of his complaint and of its written contract with him, but that the insurer "refused to accept defense of said suit, but authorized plaintiff in writing, without waiver of any of plaintiff's rights under the contract of insurance, to defend said suit leaving in abeyance questions of coverage under the insurance contract." It was further alleged that "plaintiff, with the written consent of the defendant as to the propriety of the settlement, did [thereafter] effect a compromise settlement of said damage suit for the sum of $3,500, and did pay over said sum to said Met L. Cathey in release of said cause and claim." These allegations were admitted by the insurer. The insurer subsequently also admitted that the expenses of $626.99 incurred by the insured in defense preparations prior to the settlement were fair, reasonable and necessary expenses.

The pre-trial order entered recites that the principal issues between the parties were (1) whether Cathey at the time of his injury was doing work under the written contract; (2) whether he had in fact been employed by the insured to do any work outside the contract; and (3) whether, even if he was doing such outside work, that would relieve the insurer from liability.

The trial briefs filed after the pre-trial hearing are incorporated in the record, and that of the insurer states: "The question, as we see it, is whether or not at the time of his injuries Met L. Cathey was an employee." It further declared that "Defendant believes that it is in a position to introduce testimony * * * that prior to the time of the injury * * * Cathey and men who had been working for [him], clearing plaintiff's right-of-way under the contract entered into, had been directed by plaintiff's local superintendent, or division superintendent, to stop the work of clearing the right-of-way and to go outside of the right-of-way and cut designated trees at a rate of pay of 30¢ per hour" and "that one of plaintiff's own foremen assisted in and directed the work." It then concluded: "This defendant takes the position, therefore, that considering the pleadings in the case of Met L. Cathey against the Telephone Company * * *, the consideration paid in settlement of that suit and the testimony which defendant believes it will be able to produce, it is justified in its position that Met L. Cathey was an employee

of the plaintiff at the time he complains he was injured", and "Defendant further is justified in taking the position that before plaintiff can recover under that policy it must show that, * * * at the time Met L. Cathey was injured, he was, in fact, not an employee of plaintiff and that the burden is on the plaintiff to make that showing to substantiate the allegations of its complaint in this cause."

It will be noted that up to this point the only issue raised by the insurer was whether Cathey was in fact an employee or an independent contractor as to the work done at the time of his injury. The insurer was subsequently permitted, by amended answer, to set up the further defense that "Plaintiff is estopped from asserting against this defendant that Met L. Cathey was not its employee at the time he was injured and from asserting a claim against this defendant under its policy upon the theory that Met L. Cathey was an independent contractor." The theory of this contention, as indicated on the trial and in the briefs here, was that the settlement made was equivalent to an admission of the allegations of Cathey's complaint and had substantially the effect of a judgment against the insured, and that the insured therefore ought to be judicially precluded from ever subsequently asserting that Cathey was not its employee.

The insurer apparently agreed with, or at least accepted for the purposes of this case, the insured's view that, if the insured was not legally estopped to show that Cathey was an independent contractor, then all that remained in the lawsuit was for the insured to sustain the burden of proving that fact, and that this would settle the insurer's liability for both the litigation expense and the settlement payment, without any distinction between them.

On the trial, the insurer offered no evidence to show that, in connection with the settlement or otherwise, the insured had in fact conceded that Cathey was its employee or that the settlement had been made on any other basis than the ordinary willingness and desire of a litigant to purchase peace on a reasonable basis, without regard to the question of actual liability. The insurer as a matter of fact did not attempt to offer any evidence of any nature in the present action. The testimony, which it had stated in its trial brief that it believed that it was in a position to offer, that Cathey at the time of his injury was engaged in doing work outside the terms of the written contract, was not produced. The insured's evidence established undisputedly—the insurer merely controverting the court's right to receive the testimony—that, despite the allegations in Cathey's complaint, the work in which he was engaged at the time of his injury was actually under the written contract and within his independent contractor relationship, with Spears as his own employee.

The trial court held in substance that the mere fact that the insured had made a settlement of $3,500, without more, did not, as the insurer contended, create a legal estoppel in the case to assert that Cathey was not its employee, such as a judgment in Cathey's favor would have done; that the evidence conclusively showed that Cathey was in fact an independent contractor at the time of his injury, under a written contract such as the policy required; and that, on the basis of the issues presented in the case, the insured was entitled to a judgment for the amounts sought.

On the appeal here, the insurer simply renews its general contention that the insured was legally estopped by the settlement from asserting that Cathey was an independent contractor at the time of his injury, and that the trial court therefore erred in receiving evidence on the issue and considering it.

The lengthy statement which we have made has seemed necessary to indicate clearly the somewhat singular situation in the case and the narrow question to which our consideration accordingly must be limited. The legal question whether the insurer generally would be entitled to determine its obligation to defend against Cathey's suit from the allegations of his complaint alone, or whether the obligation to defend might also be dependent upon whether Cathey, despite his allegations, was in fact an independent contractor at the time, is not before us. Indeed, for the purpose of this case, the insurer concedes in its brief that, if Cathey actually was an independent contractor and that fact had been adjudicated in his lawsuit by trial and judgment, "then appellant would have been liable to appellee for its expenses and attorney's fees incurred in the defense of the suit because it would have then been conclusively proven that Cathey was an independent contractor and appellant would be liable under its policy." The legal question whether, if the insurer was ob-

ligated, on the basis of the actual facts of the situation and despite the allegations of Cathey's complaint, to defend the action brought against the insured but refused to do so, the insurer's obligation to indemnify the insured for the settlement made with Cathey would stand on the same footing, in view of Cathey's allegations, as the insurer's liability for the insured's litigation expenses is also not before us. These basic questions the insurer for some reason—possibly business considerations in other relations between the parties—has seen fit to eliminate from the case.

As the matter has been submitted to us, we must hold that the trial court properly took the view that the making of the settlement with Cathey, to which the insurer had consented, did not per se operate to create a legal estoppel against the insured to prove that Cathey was in fact an independent contractor, for whatever rights that fact might otherwise be pertinent under the policy. Bare offers of compromise have traditionally in the law, and under Arkansas jurisprudence, been accorded neither legal nor factual implication as acceptances of the verity of an adversary's pleading or as admissions of liability on the cause of action. See 4 Wigmore on Evidence, 3rd Ed., § 1061; Lake v. Wright, 186 Ark. 227, 53 S.W.2d 233; Geyer v. Western Union Telegraph Co., 192 Ark. 578, 93 S.W.2d 660; Seeman v. Hilderbrand, 195 Ark. 677, 113 S.W.2d 724. The mere completion of a compromise settlement necessarily has no greater or different effect.

While a statement made in connection with a compromise settlement may sometimes be factually admissible against a party (see Cunningham v. Davis, 203 Ark. 982, 159 S.W.2d 751), it is not contended here that the insured ever made any statement recognizing that Cathey was in fact an employee. The insurer simply argues that the insured's willingness to pay such a substantial sum as $3,500 in settlement should be held to constitute a conclusive admission, and an absolute estoppel as a matter of law to deny, that Cathey was not an independent contractor. But, if it is possible to contend that the amount of the settlement was so unusual as to import an inference that it was not a mere compromise or purchase of peace but an implied admission that Cathey was an employee, that inference clearly would not be one of absolute law, as the insurer

argues, but at most one of relative fact to be weighed with the other evidence in the situation. For our purposes here, the question would be settled by the trial court's finding, on ample evidence, that Cathey was in fact an independent contractor and that there was no sufficient basis for any estoppel against the insured so contending on the issues raised by the insurer.

On the questions presented to us, the judgment is affirmed.